# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

## CRIMINAL COVER SHEET

***Instructions:*** *Effective November 1, 2016, this Criminal Cover Sheet must be completed and submitted, along with the Defendant Information Form, for each new criminal case.*

CASE NAME:

USA V.   JERMOINE ("JAY") C.  BRANTLEY, et al.

CASE NUMBER:  **3:24-cr-00482 JD**

CR

| | | | |
|---|---|---|---|
| **Is This Case Under Seal?** | Yes ✔ | No | |
| **Total Number of Defendants:** | 1 | 2-7 ✔ | 8 or more |
| **Does this case involve ONLY charges under 8 U.S.C. § 1325 and/or 1326?** | Yes | No ✔ | |
| **Venue (Per Crim. L.R. 18-1):** | SF ✔ | OAK | SJ |
| **Is this a potential high-cost case?** | Yes | No ✔ | |
| **Is any defendant charged with a death-penalty-eligible crime?** | Yes | No ✔ | |
| **Is this a RICO Act gang case?** | Yes | No ✔ | |

**Assigned AUSA (Lead Attorney):** Barbara Valliere, AUSA

**Date Submitted:** 08-27-24

**Comments:**

RESET FORM     SAVE PDF

Form CAND-CRIM-COVER (Rev. 11/16)

# United States District Court

## FOR THE
## NORTHERN DISTRICT OF CALIFORNIA

## VENUE: SAN FRANCISCO

UNITED STATES OF AMERICA,

V.

JERMOINE ("JAY") C.  BRANTLEY, aka
JAY E. JOHNSON,

HANEEF Z. SALEEM, and

BRIAN MORRIS

DEFENDANT(S).

# INDICTMENT

18 U.S.C. § 1349 – Conspiracy to Commit Wire
Fraud;
18 U.S.C. § 1343 – Wire Fraud;
18 U.S.C. § 371 – Conspiracy to Smuggle Goods into
the United States;
18 U.S.C. § 545 – Smuggling Goods into the United
States;
18 U.S.C. § 541 – Entry of Goods Falsely Classified;  18 U.S.C. § 542 – Entry of Goods by Means of False
Statements;
7 U.S.C. § 136j(a)(1)(A), (E) & 136l(b)(1)(B) –
Distribution and Sale of Unregistered,
Misbranded Pesticides;
49 U.S.C. § 5124(c) & (d) – Hazardous Substances
Act;
18 U.S.C. § 2 – Aiding & Abetting;
18 U.S.C. §§ 981(a)(1)(C), 982(a)(2)(B), & 28 U.S.C.
§ 2461(c) – Forfeiture Allegation

A true bill.

/s/ Foreperson of the Grand Jury

Foreman

Filed in open court this ___27th___ day of

August, 2024
_____.

Clerk

Bail, $ ___warrant___

U.S. Magistrate Judge Lisa J. Cisneros

ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

FILED

Aug 27 2024

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 3:24-cr-00482 JD |
| Plaintiff, | |
| v. | VIOLATIONS: |
| | 18 U.S.C. § 1349 – Conspiracy to Commit Wire Fraud; |
| JERMOINE ("JAY") C.  BRANTLEY, aka JAY E. JOHNSON, | 18 U.S.C. § 1343 – Wire Fraud; |
| | 18 U.S.C. § 371 – Conspiracy to Smuggle Goods into the United States; |
| HANEEF Z. SALEEM, and | 18 U.S.C. § 545 – Smuggling Goods into the United States; |
| BRIAN MORRIS, | 18 U.S.C. § 541 – Entry of Goods Falsely Classified; |
| Defendants. | 18 U.S.C. § 542 – Entry of Goods by Means of False Statements; |
| | 7 U.S.C. § 136j(a)(1)(A), (E) & 136*l*(b)(1)(B) – Distribution and Sale of Unregistered, Misbranded Pesticides; |
| | 49 U.S.C. § 5124(c) & (d) – Hazardous Substances Act; |
| | 18 U.S.C. § 2 – Aiding & Abetting; |
| | 18 U.S.C. §§ 981(a)(1)(C), 982(a)(2)(B), & 28 U.S.C. § 2461(c) – Forfeiture Allegation |

INDICTMENT

The Grand Jury charges:

At all times relevant to this Indictment, unless otherwise indicated, and with all dates being approximate and inclusive:

INDICTMENT

INTRODUCTORY ALLEGATIONS

***Background regarding import tariffs***

1.      The United States Customs and Border Protection (CBP) and the importing/exporting community share responsibility to maximize compliance with law and regulations regarding imports and exports.  The CBP is responsible for, among other things, controlling, regulating, and facilitating the movement of carriers, people, and commodities between the United States and other nations; protecting the American consumer and the environment against the introduction of hazardous, toxic, or noxious products into the United States; and detecting, interdicting, and investigating smuggling and other illegal practices aimed at illegally entering narcotics, drugs, contraband, or other prohibited articles into the United States.  The CBP is also responsible for detecting, interdicting, and investigating fraudulent activities intended to avoid the payment of duties, taxes, fees, and activities meant to evade the legal requirements of international traffic and trade.

2.      Ports of entry conduct the daily, port-specific operations like clearing cargo, collecting duties and other monies associated with imports.  When a shipment reaches the United States, the importer of record (*i.e.*, the owner, purchaser, or licensed customs broker designated by the owner, purchaser, or consignee) will file entry documents for the goods with the port director at the goods' port of entry.  Imported goods are not legally entered until after the shipment has arrived within the port of entry, delivery of the merchandise has been authorized by CBP, and estimated duties have been paid.

3.      Within 15 calendar days of the date that a shipment arrives at a United States port of entry, entry documents must be filed at a location specified by the port director.  These documents are: (1) Entry Manifest or Application and Special Permit for Immediate Delivery or other form of merchandise release required by the port director; (2) commercial invoice or a pro forma invoice when the commercial invoice cannot be produced; (3) packing lists, if appropriate; and (4) other documents necessary to determine merchandise admissibility.  If the goods are to be released from CBP custody at the time of entry, an entry summary for consumption must be filed and estimated duties deposited at the port of entry within 10 working days of the goods' entry.

4.      Following presentation of the entry, the shipment may be examined, or examination may be waived.  The shipment is released if no legal or regulatory violations have occurred.  Entry summary

INDICTMENT                                    2

documentation is filed and estimated duties are deposited within 10 working days of the entry of the merchandise at a designated customhouse.

5.      Customs brokers are the only persons who are authorized by the tariff laws of the United States to act as agents for importers in the transaction of their customs business.  Customs brokers are private individuals or firms licensed by CBP to prepare and file the necessary customs entries, arrange for the payment of duties found due, take steps to effect the release of the goods in CBP custody, and otherwise represent their principals in customs matters.

6.      Importers are required to assess whether their merchandise complies with the requirements of other federal agencies (*e.g.*, the Environmental Protection Agency (EPA), and Department of Transportation (DOT)) and obtain licenses or permits if required from them.  Importers are also required to determine whether their goods are subject to a Commerce Department antidumping or countervailing duty.

7.      All goods imported into the United States are subject to duty or duty-free entry in accordance with their classification under the applicable items in the Harmonized Tariff Schedule (HTS) of the United States.  The tariff schedule is divided into various sections and chapters dealing separately with merchandise in broad product categories.  An HTS or harmonized tariff code is a six-digit code that classifies globally traded products.

8.      Antidumping (AD) and countervailing (CV) duties are additional duties that may be assessed on imported goods intended for sale in the United States at abnormally low prices.  These low prices are the result of unfair foreign trade practices that give some imports an unearned advantage over competing U.S. goods.

9.      The origin of merchandise that is imported into the customs territory of the United States can affect, among other things, the rate of duty, admissibility, and AD or CV duties.

*Background regarding the regulation of pesticides*

10.      The Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA) as amended, provides the statutory authority governing the importation of pesticides and pesticide devices into the United States.  Promulgated under Section 17(c) of this authority, CBP regulations at 19 C.F.R. Parts 12.112-

INDICTMENT                                    3

117 describe the procedures governing these importations. Among other requirements, these regulations require importers to submit to CBP an EPA Notice of Arrival that the EPA has reviewed and approved before the import arrives in the United States. Pesticides not registered in accordance with FIFRA will be refused entry into the United States. Pesticides will also be refused entry if they are identified as adulterated or misbranded, if they violate FIFRA provisions in any other way, or if they are otherwise injurious to health or the environment.

11. In addition to restrictions applied to imports, under FIFRA, no one can sell or distribute any pesticide in the United States that is not registered, and no pesticide producer may produce a pesticide unless the "establishment" in which it is produced is registered with the EPA. 7 U.S.C. § 136a, 136j(a)(1)(A). Before registering a pesticide, the EPA may require testing to determine the pesticide's effect on human health and the environment and to develop specific instructions and restrictions for its safe and effective use. The EPA assigns an EPA product registration number to each registered pesticide, and assigns an establishment number to each producing establishment registered with the EPA.

12. The pesticide's label, which must be affixed to any container of the pesticide that is distributed or sold, is required to contain, among other information, the EPA product registration number for the pesticide in the form "EPA Registration No. ___" or EPA Reg. No. ___," and the producing establishment's registration in the form "EPA Est. ___." 40 C.F.R. § 156.10.

13. Except as provided by law, 7 U.S.C. § 136j(a)(1)(E) prohibits the distribution or sale of a misbranded pesticide. Section 136(q)(1) provides in part that a pesticide is "misbranded" if:

> (A) its labeling bears any statement, design, or graphic representation relative thereto or to its ingredients which is false or misleading in any particular;
> …

> (C) it is an imitation of, or is offered for sale under the name of, another pesticide;

> (D) its label does not bear the registration number assigned under section 136e of this title to each establishment in which it was produced;
> …

14. Section 136(u) defines "pesticides" as "any substance or mixture of substances intended for preventing, destroying, repelling, or mitigating any pest."

INDICTMENT                                                4

15.    Trichloroisocyanuric acid (TCCA), a chemical commonly used as a pool disinfectant to kill bacteria and other pests that live in pool water, is a pesticide.  The product is commonly referred to in the pool industry as "chlorine."

### Background regarding hazardous materials

16.    The Hazardous Materials Transportation Act (HMTA) was enacted by Congress to protect the general public from the risks to life, property, and the environment inherent in the transportation of hazardous materials in commerce.  49 U.S.C. § 5101.  Under the HMTA, "hazardous material" means any substance or material that the Secretary of U.S. Department of Transportation (DOT) designates as hazardous material, including an explosive, radioactive material, infectious substance, flammable or combustible liquid, solid, or gas, toxic, oxidizing, or corrosive material, and compressed gas.  49 U.S.C. §§ 5102(2), 5103(a).

17.    The HMTA provides the Secretary of Transportation with the authority to prescribe regulations for the safe transportation of hazardous materials in intrastate, interstate, and foreign commerce.  49 U.S.C. § 5103(b).  The act requires the Secretary of Transportation to designate as hazardous any materials "combustible liquid, solid, or gas, toxic, oxidizing, or corrosive material" that the Secretary determines may pose an unreasonable risk to health and safety or property.  49 U.S.C. § 5103(a).

18.    Pursuant to authority provided under the Act, the Secretary of Transportation has promulgated Hazardous Material Regulations (HMRs), which appear at Title 49, Code of Federal Regulations, Sections 171-180.  The HMRs set forth requirements for the safe transportation in commerce of materials designated as hazardous materials and apply to each person who performs, or causes to be performed, functions related to the transportation of such hazardous materials.  49 C.F.R. § 172 *et seq.*; 49 C.F.R. § 172.3.

19.    Pursuant to the authority provided under the act, the Secretary of Transportation has designated groups and classes of materials as "hazardous materials" because they are capable of posing an unreasonable risk to health, safety, and property when transported in commerce.  49 C.F.R. § 171.8.

20.    The hazardous materials so designated are listed in the Hazardous Materials Table (49 C.F.R. § 172.101), which sets forth hazardous materials descriptions, proper hazardous materials

INDICTMENT                                             5

shipping names, hazard classes, materials identification numbers (also known as United Nations numbers (UN numbers)), packing group numbers, label codes, and other pertinent information.

21.    Among other things, the HMRs require that each person who offers for transportation in commerce a hazardous material designated in the Hazardous Materials Table, or transports such hazardous materials, must:

a.    Provide to carriers a shipping paper that sets forth the proper shipping name prescribed for the hazardous materials, the hazard classes, the material identification numbers, the packing group numbers, and the total quantity of the hazardous materials.  49 U.S.C. § 5110(a); 49 C.F.R. §§ 172.200, 172.201 (preparation of shipping papers), 172.202 (description of hazardous material on shipping papers), 172.204 (shipper's certification).

b.    Place on the container or package containing the hazardous materials a visible and non-obscured label identifying the primary and subsidiary hazards of the materials.  49 C.F.R. § 172.400 *et seq.*

c.    Place on each bulk packaging, freight container, unit load device, transport vehicle or rail car containing any quantity of a hazardous material the required placard on each side and each end.   49 C.F.R. § 172.500 *et seq.* (placarding).

22.    Trichloroisocyanuric acid (TCCA) is classified as a 5.1 oxidizer under the HMR.  An oxidizer is a material that, generally by yielding oxygen, causes or enhances the combustion of other materials.  Swimming pool disinfectant containing TCCA must display the following placard and label on each container and package:



23. The DOT's Pipeline and Hazardous Materials Safety Administration is delegated authority under the regulations to conduct inspections of hazardous materials and to conduct enforcement activity involving the inspecting of labels and packaging. 49 C.F.R. §§ 107.301, 107.303, and 107.305. Intentionally mislabeling packages that contain hazardous materials and transporting undeclared hazardous materials interferes with this lawful government function, among others.

### *Defendants, entities controlled by defendants, and other entities*

24. Defendant JERMOINE ("JAY") C. BRANTLEY, also known as JAY E. JOHNSON, was a resident of Murrieta, California.

25. Defendant HANEEF Z. SALEEM was a resident of New York, New York.

26. Defendant BRIAN MORRIS was a resident of Peoria, Arizona.

27. Macleem B7, LLC, later known as Macleem B7 Enterprise, LLC (hereinafter Macleem B7), was registered with the California Secretary of State on August 16, 2021 as a wholesale trade company with business addresses in Sacramento and Murrieta, California. BRANTLEY was the Manager and Chief Executive Office (CEO) of Macleem B7.

28. B7 Enterprise, LLC, later known as B7 International, LLC (hereinafter B7 International), was registered with the California Secretary of States on February 15, 2022 as a wholesale trade company with a business address in Sacramento, California, BRANTLEY was the Manager and CEO of B7 International.

29. NB Trading Company LLC (hereinafter NB Trading), was registered with the California Secretary of State on April 8, 2022 as an import and distribution of general goods company with a principal and mailing address in Murrieta, California. BRANTLEY was the Manager and CEO of NB Trading.

30. KG Logistics International, LLC (hereinafter KG Logistics), was registered with the Texas Secretary of State on August 16, 2022, with a mailing address in Houston, Texas. BRANTLEY was the Manager of KG Logistics.

31. Ugly Pool Guy, Inc. (hereinafter Ugly Pool Guy) was registered with the Arizona Secretary of State on June 8, 2009, as a swimming pool repair and construction company with a business address in Peoria, Arizona. MORRIS was the President and Director of Ugly Pool Guy.

INDICTMENT                                          7

32.     Company #1 was a wholesale distributor of swimming pool and spa products operating in 28 distribution centers in Arizona and California, including the Northern District of California.

33.     Company #2 was a pool renovation, cleaning, and repair business operating in and around Houston, Texas.

34.     Company #3 was a company that specialized in pool maintenance, pool repair, and hot tub maintenance operating in the greater Austin, Texas area.

35.     Company #4 was a company specializing in new pool construction and design, pool renovation, and pool maintenance operating in central Texas.

36.     Company #5 was a company specializing in pool renovation, cleaning, and repair operating in the greater Houston, Texas area.

37.     Company #6  was a pool company specializing in pool cleaning, repair, and maintenance for residential and commercial customers in the greater Austin, Texas area.

38.     Company #7 was a company specializing in pool maintenance, repair, and remodeling services in the greater Dallas, Texas area.

39.     Company #8 was a company specializing in water treatment products headquartered in El Campo, Texas.  Customer #1 was the manager of Company #8.

40.     Company #9 was a customs brokerage limited liability company doing business in Spring, Texas.  Broker #1 was employed by Company #9.

41.     Company #10 was a customs brokerage company that primarily operated in the freight forwarding business.  Broker #2 was employed by Company #10.

42.      Company #11 was a San Francisco Bay Area trucking company that offered transport between the port of Oakland and Northern California and Nevada.

43.     Company #12 was a trucking and logistics company located in Oakland, California.

44.     Company #13 was a major manufacturer of disinfectant of trichloroisocyanuric acid products in China, located in Juancheng County, Shandong province.

//

//

//

INDICTMENT                              8

## THE CONSPIRACY AND SCHEME TO DEFRAUD CUSTOMERS

### *Scheme to Defraud*

45.     From a time unknown but no later than June 23, 2021 and continuing through in or about November 2022, defendants JERMOINE "JAY" BRANTLEY, aka JAY E. JOHNSON, HANEEF Z. SALEEM, and BRIAN MORRIS, and others known and unknown to the Grand Jury engaged in a scheme, plan, and artifice to defraud, among others, pool maintenance and supply customers who purchased TCCA, as to a material matter, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by making materially false and misleading statements.

46.     The objectives of the scheme to defraud were, among other objectives, to cause pool maintenance and supply customers to purchase pool disinfectant products from Macleem B7, B7 International, NB Trading, KG Logistics, and Ugly Pool Guy, by falsely representing that (a) the products contained 99% trichloroisocyanuric acid (TCCA); and (b) the companies selling the TCCA product had obtained the required EPA registration numbers for the manufacturer and for the TCCA products.

47.     The manner and means by which defendants and their co-conspirators sought to accomplish the objectives of the scheme to defraud included, but were not limited to, the following:

a. Defendants solicited individuals to purchase their imported product claiming that it contained 99% TCCA even when they learned that it did not contain that level of TCCA.

b. Defendants and others created and approved promotional and other materials that contained material misrepresentations, including representations about the strength and efficacy of the product.

c. Defendants emailed and caused others to email promotional and other materials to customers.

d. Defendants represented to potential TCCA customers that both the manufacturer and the products were properly registered with the EPA, when defendants knew that no such registration existed.

e. Defendants obtained and then used without authorization the EPA establishment and product

INDICTMENT                                          9

registration numbers of another company, Company #13.

    f.  Defendants fraudulently continued to use the EPA establishment and product registration numbers of Company #13 on defendants' products even after receiving a cease and desist letter from Company 13's attorney.

    g.  Based on defendants' and others' false and misleading representations and omissions, customers purchased in excess of 3.2 million dollars' worth of product between June 23, 2021 and November 2022 from Macleem B7, B7 International, NB Trading, and KG Logistics, the companies associated with BRANTLEY and SALEEM. During the same period, MORRIS, through Ugly Pool Guy, sold over $800,000 worth of product that he received from Macleem B7 and these other companies.

48. As part of the conspiracy and the scheme to defraud the defendants and their co-schemers also engaged in the following acts:

### *Business Partners BRANTLEY and SALEEM begin importing chlorine tablets*

49. In or about 2011, BRANTLEY and SALEEM founded Macleem Sports Wear, LLP, a business devoted to the retail sale of ready-to-wear clothing and accessories. SALEEM was the principal partner and New Jersey was the state of incorporation. Eventually, BRANTLEY, who had developed contacts in China, began "outsourcing" the sports apparel from there.

50. In or about July of 2018, the United States began imposing an additional 25 percent tariff on a wide range of products manufactured in China, including TCCA. As the new tariffs went into effect in 2019, many United States pool maintenance supply companies, such as Company #1, stopped importing chlorine from China and relied solely on domestic sources of supply.

51. During the spring and summer of 2020 in the wake of the COVID-19 pandemic, there was a boom in the demand for swimming pools in the United States and an increase in the demand for chlorine causing its price to increase. On August 27, 2020, Hurricane Laura caused a devastating fire at a major TCCA supplier located in Louisiana that wiped out the domestic chlorine supply. With prices skyrocketing, importing chlorine from China appeared reasonable to companies such as Company #1 and Company #2.

INDICTMENT                    10

52.    In June 2021, BRANTLEY and SALEEM sent out a mass email soliciting potential clients to buy chlorine from their new company Macleem B7.  From the outset, Macleem B7 misrepresented the legitimacy of its business.  For example, on July 21, 2021, BRANTLEY sent out a mass email advertising that "Trichlorine tablets are in stock" falsely adding that Macleem B7 was "registered with the EPA":

> **From:** Macleem B7 Inc <ppe@macleem.com>
> **Sent:** Wednesday, July 21, 2021 2:48 PM
> **To:** Macleem B7 Inc <ppe@macleem.com>
> **Subject:** Trichlorine tablets are in stock!
>
> With a shortage of chlorine and chlorine-based products.  This scarcity has driven prices for the once easy to obtain cleaning products to an all-time high. Fortunately, our B7 chlorinating tablets are readily available.
>
> Our company, **Macleem B7**, can fulfill your need for trichlorine tablets. **We are registered with the EPA** and we also have samples available for you to review/test.

Neither Macleem B7 nor its products were registered with the EPA.

53.    Macleem B7 also made false claims about the product's ingredients, sending the following label to prospective customers:



Under the EPA Pesticide Product and Label System, Trichloro-s-Triazinetrione is another name for TCCA.

54.    In August of 2021, Macleem B7 engaged a licensed customs broker from Company #8 (Broker #1) to facilitate the entry of the product into the United States ports.  BRANTLEY provided Broker #1 with documentation to use in filling out the proper shipping papers, which identified the product as "disinfectants" and included an incorrect HTS classification code of 3808.94.5095.  Unlike

INDICTMENT                                        11

the HTS code for TCCA, 2933.69.6015, HTS code 3808.94.5095 did not trigger additional AD or CV duties.  BRANTLEY also falsely told Broker #1 he had letters from the EPA confirming that his importation of these chemicals was legal.

55.    Macleem B7 shipments of improperly classified TCCA began arriving in Houston, Texas in the fall of 2021.  None of these shipments were identified as TCCA and therefore none were then assessed the 285.63 percent AD duty and 10.81 percent CV duty rate that applied.

56.    In November of 2021, Macleem B7 hired a new customs broker from Company #9 (Broker #2).  BRANTLEY again identified the product that he was importing as a "disinfectant" and supplied Broker #2 with the HTS code 3808.94.5095.  Thereafter, all shipping documents for the TCCA identified the product as "Swimming Pool Disinfectant" with an HTS code of 3808.94.5095.

57.    Between October of 2021 through October of 2022, using Broker #1 and Broker #2, BRANTLEY and SALEEM caused Macleem B7, B7 International, NB Trading, and KG Logistics to import 66 shipments with the improper HTS code that did not trigger AD and CV duties.

### Brian MORRIS and Ugly Pool Guy

58.    On July 30, 2021, MORRIS of Ugly Pool Guy in Phoenix, Arizona called Brantley in response to his email solicitation.  The two men partnered up so that MORRIS would redistribute the TCCA tablets he received from Macleem B7 to other pool supply companies in Arizona, Nevada, and Texas.  MORRIS quickly placed large orders for TCCA tablets from Macleem B7 and asked that BRANTLEY use the following label on the buckets for the tablets:



INDICTMENT                    12

59.     Between July 31, 2021 when their partnership was formed and January 17, 2022, MORRIS paid Macleem B7 and BRANTLEY over $1.3 million for orders for TCCA.  During this time, MORRIS advertised the tablets on Facebook, YouTube, and other social media that the product contained 99% TCCA.

60.     In or around January 19, 2022, after the first Ugly Pool Guy tablets had arrived from China and been distributed to customers, MORRIS began receiving complaints from his customers and learned from BRANTLEY that the tablet did not contain 99% TCCA, but had been diluted with boric acid.  That day, MORRIS warned BRANTLEY by text message that their representations to their customers had been fraudulent.  Despite recognizing that the product they had sold to their customers was not the product they had promised, neither BRANTLEY nor MORRIS recalled the product and instead continued to sell the tablets as previously advertised.

*Customer #1 tells BRANTLEY he is violating the law*

61.     In early November of 2021, Customer #1, a managing member of Company #8, learned of Macleem B7 from a Texas pool supplier.  On November 8, 2021, BRANTLEY told Customer #1 that he was selling "trichlor TCCA" in "3-inch tablets."  Customer #1 asked BRANTLEY whether the product bore the proper hazardous materials placarding, and whether the product had an EPA registration number, and BRANTLEY assured Customer #1 that the product was EPA registered.  BRANTLEY also emailed Customer #1 a copy of the Safety Data Sheet (SDS) associated with the product.  The SDS revealed that the product was both subject to high tariffs and a Class 5.1 oxidant that required an oxidizer placard be affixed to the containers during shipping.  BRANTLEY sent Customer #1 a photograph of how the product would look in the shipping container and the photograph revealed that none of the buckets had 5.1 oxidizer placards affixed to them.

62.     On November 9, 2021, at BRANTLEY's direction, Customer #1 obtained a sample of the product and photographed the front and back labels of the sample's bucket:

INDICTMENT                              13




The EPA establishment number listed on the back label, 100791, was invalid:



63.    On November 9, 2021, BRANTLEY offered to sell the mislabeled, improperly declared product to Customer #1.  Customer #1 declined, informing BRANTLEY that the product was being brought into the United States illegally.

*Macleem B7 misappropriates the EPA numbers of Company #13*

64.    On or around January 30, 2022, BRANTLEY and SALEEM hired a consultant to assist them with the EPA registration process.  The consultant reviewed Macleem B7's documents and application for registration and noted that they were using the EPA registration numbers for a different manufacturer, Company #13, who made a similar product.  The consultant told SALEEM and BRANTLEY that Macleem B7 could use Company #13's information only if Company #13 was

INDICTMENT                    14

producing Macleem B7's product and only if Macleem B7 got Company #13's approval to do so.  On March 1, 2022, SALEEM told the consultant that Macleem B7 was withdrawing its applications for registration with the EPA.

65.    On January 3, 2022, an Application for the Registration of Pesticides filed with the Arizona Department of Agriculture (AZDA) in the name of Ugly Pool Guy signed by "Brian Morris" sought to register an Ugly Pool Guy TCCA product under the EPA Registration No. 83936-3, a number that belonged to Company #13.  The AZDA rejected the application.  On February 1, 2022, an AZDA pesticide control inspector told MORRIS that the AZDA had received a complaint that the Ugly Pool Guy tablets were mislabeled and misbranded because they had incorrect EPA registration numbers.  Despite this warning, MORRIS continued to sell the product after February 1, 2022.

66.    On February 17, 2022, BRANTLEY submitted an application to register a disinfecting tablet for use in the state of California through the California Department of Pesticide Regulation (CDPR).  In his application, BRANTLEY falsely claimed that the product's producer was Company #13, that B7 International was the "registered agent" for Company #13, and that B7 International's product had obtained the EPA number 83936-3, one of Company #13's product numbers.

67.    On or about March 22, 2022, BRANTLEY falsely represented to Company #1's director of purchasing that Macleem B7 and B7 International were authorized agents of Company #13, emailing him a fraudulent "Authorization" that he falsely claimed was from Company #13.

68.    On March 30, 2022, an attorney representing Company #13 sent BRANTLEY a "Notice and Demand to Cease and Desist," stating that Macleem B7 was (a) falsely using Company #13's EPA numbers; (b) falsely claiming it had a contractual relationship with Company #13; (c) falsely claiming it was an authorized reseller of Company #13's product; (d) falsely claiming the right to affix to chemical products Company #13's labels; (e) printing labels with Company #13's EPA company and establishment numbers on them; and (f) using forged instruments to claim it was the agent of Company #13.  The letter demanded that BRANTLEY and his companies cease and desist.  Instead, the next day SALEEM contacted the Macleem B7 consultant and confirmed that Macleem B7 wanted to proceed with trying to register with the EPA using Company #13's EPA number.  On April 4, 2022,

INDICTMENT                                          15

BRANTLEY emailed the attorney for Company #13 stating that Macleem B7 would abide by the request to cease and desist.

69.    On April 21, 2022, CDPR told BRANTLEY that he needed an authorization letter from Company #13 to work as its agent.  On April 22, 2022, BRANTLEY sent the CDPR a fraudulent "Authority to Act as Agent" he claimed came from Company #13.  Told by CDPR that it was insufficient, BRANTLEY sent a second document falsely identifying "Jay E. Johnson and Haneef Saleem" as agents for Company #13.

70.    Following receipt of the cease and desist demand, from April 1, 2022 through October 25, 2022, Macleem B7, B7 International, NB Trading, and KG Logistics, imported as many as 31 shipments of TCCA sent from China to the Ports of Oakland, Houston, Savannah, and Norfolk.  Some of these shipments purported to be registered with the EPA using Company #13's EPA registration numbers.

### *"Pool disinfectant" and "cyanuric chloride" shipments are detained at the ports*

71.    On or about September 19, 2022, two shipments of "cyanuric chlorine" imported by KG Logistics arrived at the Port of Oakland in shipping containers MEDU2319330 and MEDU5119119.  The containers, which were leaking, were detained for CBP review.

72.    On October 25, 2022, officials with the EPA, DOT, and Department of Homeland Security examined the containers and obtained a 55-pound bucket from each container for testing.  The bucket from MEDU5119119 was labeled "Swimming Pool Disinfectant, ChlorineKing.com, 3" Tablets, EPA Reg. No.: 83936-4, EPA Est No.: 83936-CHN-001, Item #H002, MFG:Jun.2022, EXP.:Jun.2022," and the bucket from container MEDU2319330 was labeled "Granulated Swimming Pool Disinfectant, ChlorineKing.com, Granular TriChlor, EPA Reg. No.: 83936-2, EPA Est No.: 83936-CHN-001, Item #H002, MFG: Jun.2022, EXP.: Jun.2022."  Screening results from the samples from the buckets

INDICTMENT                          16

revealed they both contained TCCA, and the shipping containers and buckets in the containers were not marked with the required 5.1 oxidizer placard:

  

73. On or about September 12, 2022, three shipments of "water treatment product" imported by KG Logistics arrived at the Port of Houston in shipping containers MSDU154222, MEDU360618, and TEMU329110. The containers were detained for CBP review.

74. On October 25, 2022, officials with the EPA, DOT, and Department of Homeland Security examined the containers and obtained a 55-pound bucket from each container for testing. Buckets from the first container contained tablets and were labeled "B7 Disinfectant Tablets, EPA Reg. No.: 83936-3, EPA Est No.: 83936-CHN-001, Active Ingredient: Trichloro-s-Triazinetrione." Other buckets from the first container contained granular materials and were labeled "B7 Disinfectant T/D Granular, EPA Reg. No.: 83936-3, EPA Est No.: 83936-CHN-001." Buckets from the second container contained tablets and were labeled "B7 Disinfectant Tablets, EPA Reg. No.:83936-3, EPA Est No.: 83936-CHN-001, Active Ingredient: Trichloro-s-Triazinetrione." Buckets from the third container contained tablets and were labeled "B7 Disinfectant Tablets, EPA Reg. No.:83936-3, EPA Est No.: 83936-CHN-001, Active Ingredient: Trichloro-s-Triazinetrione." Screening results from the samples from each of the buckets revealed that they contained TCCA, and the shipping containers and all of the buckets in each container were not marked with the required 5.1 oxidizer placard.

INDICTMENT 17

75. On or about October 1, 2022, two shipments of "swimming pool disinfectant" imported by KG Logistics arrived at the Port of Norfolk in shipping containers MRKU840960 and TGBU665644. The containers were detained for CBP review.

76. On November 2, 2022, officials with the EPA, DOT, and Department of Homeland Security examined the containers and obtained ten 55-pound buckets from each container for testing. The 55-pound buckets of tablets from the first container were labeled "Excellent Pool Service Disinfectant Tablet, EPA Reg. No.: 83936-4, EPA Est No.: 83936-CHN-001, Active Ingredient: Trichloro-s-Triazinetrione." The 55-pound buckets of granular material from container 1 were labeled "Excellent Pool Service Disinfectant Granules, EPA Reg. No.: 83936-4, EPA Est No.: 83936-CHN-001." The 55-pound buckets of tablets from the second container were labeled "Alex Pool Service Disinfectant Tablet, EPA Reg. No.: 83936-4, EPA Est No.: 83936-CHN-001, Active Ingredient: Trichloro-s-Triazinetrione." Screening results from the samples from each of the buckets revealed they contained TCCA, and the shipping containers and all of the buckets in the containers were not marked with the required 5.1 oxidizer placard.

### *TCCA sales – July of 2021 through November of 2022*

77. From July of 2021 through October of 2022, Macleem B7, B7 International, NB Trading Company had sold approximately $3.2 million worth of TCCA tablets and granular material to pool companies in California, Texas, and Arizona, including Ugly Pool Guy and Companies #1 through #7. During the same period, MORRIS, via Ugly Pool Guy, resold more than $800,000 worth of the product he received from Macleem B7 and the other BRANTLEY companies. None of the products sold had been registered with the EPA, and some of it had been misbranded with the EPA registration and product numbers belonging to Company #13.

### THE CONSPIRACY TO SMUGGLE GOODS INTO THE UNITED STATES

78. From a time unknown but no later than August of 2021 and continuing through in or about November of 2022, defendants JERMOINE "JAY" BRANTLEY, aka JAY E. JOHNSON, and HANEEF Z. SALEEM did knowingly and intentionally conspire and agree with other persons known and unknown to the grand jury to commit the following offense, that is, smuggling merchandise contrary to law into the United States in violation of Title 18, United States Code, Sections 541, 542.

INDICTMENT                                    18

79. The objectives of the conspiracy were, among other objectives, to smuggle merchandise into the United States from China without paying the required and appropriate AD and CV duties.

80. The conspirators executed the conspiracy through the following manner and means:

    a. Defendants BRANTLEY and SALEEM provided Broker #1 and Broker #2 with HTS code numbers that did not accurately describe the product they were importing from China;

    b. Defendants BRANTLEY and SALEEM caused their brokers to complete shipping entry documents that misidentified the HTS code numbers for the product being imported;

    c. The brokers, at the defendants BRANTLEY's and SALEEM's direction, submitted shipping papers to the ports of entry that did not properly identify the product or HTS code; and

    d. Defendants BRANTLEY and SALEEM thereby avoided the lawful antidumping and countervailing duties associated with the actual product they were importing into the United States.

81. In furtherance of the conspiracy, and to the effect and accomplish the objects thereof, the defendants committed the following overt acts:

    a. In August of 2021, Macleem B7 engaged a licensed customs broker from Company #8 (Broker #1) to facilitate the entry of the product into the United States ports.

    b. BRANTLEY provided Broker #1 with documentation to use in filling out the proper shipping papers, which identified the product as "disinfectants" and included an incorrect HTS classification code of 3808.94.5095. Unlike the HTS code for TCCA, 2933.69.6015, HTS code 3808.94.5095 did not trigger additional AD or CV duties. Macleem B7 shipments of improperly classified TCCA began arriving in Houston, Texas in the fall of 2021. None of these shipments were identified as TCCA and thus none were assessed the 285.63 percent AD duty and 10.81 percent CV duty rate that then applied.

    c. In November of 2021, when Macleem B7 hired a new customs broker from Company #9,

INDICTMENT 19

Broker #2, BRANTLEY continued to identify his product as a "disinfectant" and supplied Broker #2 with the incorrect HTS code 3808.94.5095.  Thereafter, shipping documents for the TCCA misidentified the product as "Swimming Pool Disinfectant" with an incorrect HTS code of 3808.94.5095.

      d. From October of 2021 through October of 2022, using Brokers #1 and #2, BRANTLEY and SALEEM caused Macleem B7, B7 International, NB Trading, and KG Logistics to import 66 shipments with the improper HTS code that did not trigger AD and CV duties.

COUNT ONE:       (18 U.S.C. § 1349 – Conspiracy to Commit Wire Fraud)

82.    Paragraphs 1 through 77 of this Indictment are re-alleged and incorporated as if fully set forth here.

83.    Beginning on or about June 23, 2021, and continuing through on or about November 22, 2022, in the Northern District of California and elsewhere, the defendants,

JERMOINE "JAY" C. BRANTLEY,
HANEEF Z. SALEEM, and
BRIAN  MORRIS,

and others, did knowingly conspire to devise and intend to devise a scheme and artifice to defraud customers purchasing TCCA products as to a material matter and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and, for the purpose of executing such scheme or artifice and attempting to do so, transmit, and cause to be transmitted, by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

All in violation of Title 18, United States Code, Section 1349.

COUNTS TWO THROUGH FIVE:  (18 U.S.C. § 1343 – Wire Fraud)

84.    Paragraphs 1 through 77 of this Indictment are re-alleged and incorporated as if fully set forth here.

85.    Beginning on or about June 23, 2021, and continuing through on or about November 22, 2022, in the Northern District of California and elsewhere, the defendants,

JERMOINE "JAY" C. BRANTLEY,
HANEEF Z. SALEEM, and
BRIAN  MORRIS,

INDICTMENT          20

did knowingly and with the intent to defraud devise and intend to devise a scheme and artifice to defraud customers purchasing TCCA products as to a material matter, and to obtain money and property from customers by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme and artifice and attempting to do so, did transmit, and cause to be transmitted, by means of wire communication in interstate or foreign commerce, certain writings, signs, signals, pictures, and sounds, namely, the following:

| COUNT | DATE | DESCRIPTION OF WIRE COMMUNICATION |
|-------|------|-----------------------------------|
| TWO | February 3-9, 2022 | Email correspondence between Broker #2 in Texas and Company #11 in the Northern District of California regarding transport of the contents of container TEMU5774263. |
| THREE | April 3-4, 2022 | Email correspondence between Broker #2 in Texas and Company #12 in the Northern District of California regarding transport of the contents of containers CAIU2537726 and MEDU2846496. |
| FOUR | June 28, 2022 | Email correspondence between Broker #2 in Texas and Company #12 in the Northern District of California regarding transport of the contents of container MRKU9479752. |
| FIVE | October 14, 2022 | Email correspondence between Broker #2 in Texas and CBP employee in the Northern District of California regarding the re-export of containers MEDU2319330 and MEDU5119119. |

Each in violation of Title 18, United States Code, Section 1343 and 2.

COUNT SIX:  (18 U.S.C. § 371 – Conspiracy to Smuggle Goods into the United States)

86.     Paragraphs 1 through 81 of this Indictment are re-alleged and incorporated as if fully set forth here.

87.     Beginning at a time unknown to the grand jury but no later than on or about August of 2021, and continuing to at least on or about November 22, 2022, in the Northern District of California and elsewhere, the defendants,

JERMOINE "JAY" C. BRANTLEY, and
HANEEF Z. SALEEM,

knowingly and intentionally conspire and agree with other persons known and unknown to the grand jury to commit the following offenses, that is, smuggling merchandise contrary to law into the United

INDICTMENT                    21

States in violation of Title 18, United States Code, Sections 541 and 542.

88.     In furtherance of the conspiracy, and to the effect and accomplish the objects thereof, the defendants committed the following overt acts:

a.  In August of 2021, Macleem B7 engaged a licensed customs broker, Broker #1, to facilitate the entry of the product into the United States ports.

b.  BRANTLEY provided Broker #1 with documentation to use in filling out the proper shipping papers, which identified the product as "disinfectants" and included an incorrect HTS classification code of 3808.94.5095.  Unlike the HTS code for TCCA, 2933.69.6015, HTS code 3808.94.5095 did not trigger additional AD or CV duties. Macleem B7 shipments of improperly classified TCCA began arriving in Houston, Texas in the fall of  2021.  None of these shipments were identified as TCCA and thus none were assessed the 285.63 percent AD duty and 10.81 percent CV duty rate that then applied.

c.  In November of 2021, when Macleem B7 engaged a new customs broker from Company #9, Broker #2, BRANTLEY continued to identify his product as a "disinfectant" and supplied Broker #2 with the incorrect HTS code 3808.94.5095.  Thereafter, shipping documents for the TCCA contained the improper HTS code and misidentified the product as "Swimming Pool Disinfectant" with an HTS code of 3808.94.5095.

d.  From October of 2021 through October of 2022, using Brokers #1 and #2, BRANTLEY and SALEEM caused Macleem B7, B7 International, NB Trading, and KG Logistics to import 66 shipments with the improper HTS code that did not trigger AD and CV duties.

All in violation of Title 18, United States Code, Section 371.

COUNTS SEVEN THROUGH TEN:  18 U.S.C. § 545 (Smuggling)

89.     Paragraphs 1 through 81 of this Indictment are re-alleged and incorporated as if fully set forth here.

90.     On or about the dates set forth in the separate counts below, in the Northern District of California, and elsewhere, the defendants,

JERMOINE "JAY" C. BRANTLEY, and
HANEEF Z. SALEEM,

INDICTMENT                                          22

did willfully and fraudulently/knowingly import and bring into the United States merchandise, that is, chlorine tablets containing trichloroisocyanuric acid (TCCA), contrary to law, in that the prescribed duties on importing such trichloroisocyanuric acid (TCCA) were not paid:

| COUNT | DATE OF ENTRY | PRESCRIBED DUTIES NOT PAID |
|-------|---------------|----------------------------|
| SEVEN | February 13, 2022 | Antidumping and countervailing duties |
| EIGHT | April 19, 2022 | Antidumping and countervailing duties |
| NINE | June 23, 2022 | Antidumping and countervailing duties |
| TEN | September 19, 2022 | Antidumping and countervailing duties |

Each in violation of Title 18, United States Code, Section 545.

COUNTS ELEVEN THROUGH FOURTEEN:  (18 U.S.C. § 541)  (Entry of Goods Falsely Classified)

91.    Paragraphs 1 through 81 of this Indictment are re-alleged and incorporated as if fully set forth here.

92.    On or about the dates specified in the separate counts below, in the Northern District of California, and elsewhere, the defendants,

JERMOINE "JAY" C. BRANTLEY, and
HANEEF Z. SALEEM,

did knowingly effect the entry of goods, wares, and merchandise at the Customs House at Oakland, California, upon a false HTS classification, and by payment of less than the amount of duty legally due thereon:

| COUNT | DATE OF ENTRY | ENTRY NUMBER | AMOUNT PAID |
|-------|---------------|--------------|-------------|
| ELEVEN | February 13, 2022 | U72 0532784-5 | $4590 |
| TWELVE | April 19, 2022 | U72 0533248-0 | $4845 |
| THIRTEEN | June 23, 2022 | U72 0533692-9 | $3570 |
| FOURTEEN | September 19, 2022 | U72 0534310-7 | $1694 |

Each in violation of Title 18, United States Code, Section 541.

//

INDICTMENT                                         23

COUNTS FIFTEEN THROUGH EIGHTEEN:  (18 U.S.C. § 542)  (Entry of Goods by Means of False Statements)

93.    Paragraphs 1 through 81 of this Indictment are re-alleged and incorporated as if fully set forth here.

94.    On or about the dates specified in the separate counts below, in the Northern District of California and elsewhere, the defendants,

JERMOINE "JAY" C. BRANTLEY, and
HANEEF Z. SALEEM,

willfully and knowingly did enter and introduce, and attempt to enter and introduce, into the commerce of the United States imported merchandise, that is, Trichloroisocyanuric acid (TCCA), by means of false statements and by means of false and fraudulent invoices, declarations, affidavits, letters, papers, and false statements, written and verbal, that misleadingly identified the product as pool disinfectant and cyanuric chloride instead of trichloroisocyanuric acid (TCCA),

| COUNT | DATE OF ENTRY | ENTRY NUMBER | MERCHANDISE LABELLED |
|---|---|---|---|
| FIFTEEN | February 13, 2022 | U72 0532784-5 | Pool Disinfectant |
| SIXTEEN | April 19, 2022 | U72 0533248-0 | Pool Disinfectant |
| SEVENTEEN | June 23, 2022 | U72 0533692-9 | Pool Disinfectant |
| EIGHTEEN | September 19, 2022 | U72 0534310-7 | Cyanuric Chloride |

Each in violation of Title 18, United States Code, Section 542.

COUNTS NINETEEN AND TWENTY:  (7 U.S.C. § 136j(a)(1)(A), (E) & 136*l*(b)(1)(B))
(Distribution/Sale of Unregistered Pesticide)

95.    Paragraphs 1 through 77 of this Indictment are re-alleged and incorporated as if fully set forth here.

96.    On or about the dates set forth in the separate counts below, in the Northern District of California, and elsewhere, the defendants,

JERMOINE "JAY" C. BRANTLEY,
HANEEF Z. SALEEM, and
BRIAN  MORRIS,

did knowingly distribute and sell to customers purchasing TCCA products and other persons a pesticide

INDICTMENT                         24

that was not registered or otherwise authorized by the EPA,

| COUNT | DATE OF DISTRIBUTION | UNREGISTERED PESTICIDE |
|---|---|---|
| NINETEEN | September 19, 2022 | TCCA that was labeled "cyanuric chloride" shipped to Port of Oakland in container MEDU5119119 |
| TWENTY | September 19, 2022 | TCCA that was labeled "cyanuric chloride" shipped to Port of Oakland in container MEDU2319330 |

Each in violation of Title 7, United States Code, Sections 136j(a)(1)(A) and 136*l*(b)(1)(B).

COUNTS TWENTY-ONE AND TWENTY-TWO:  (7 U.S.C. § 136j(a)(1)(E) & 136*l*(b)(1)(B))
(Distribution/Sale of Misbranded Pesticide)

97.     Paragraphs 1 through 77 of this Indictment are re-alleged and incorporated as if fully set forth here.

98.     On or about the dates set forth in the separate counts below, in the Northern District of California, and elsewhere, the defendants,

JERMOINE "JAY" C. BRANTLEY,
HANEEF Z. SALEEM, and
BRIAN  MORRIS,

did knowingly distribute and sell to customers purchasing TCCA products and others a pesticide that was misbranded, to wit, the unregistered pesticide trichloroisocyanuric acid (TCCA), by causing labels to be affixed to containers of Swimming Pool Disinfectant, ChlorineKing.com that falsely suggested that the Swimming Pool Disinfectant, ChlorineKing.com was registered with the EPA and that it was produced at an establishment registered with the EPA, through defendants' unauthorized use on the labels of an EPA registration number and an EPA establishment registration number,

| COUNT | DATE OF DISTRIBUTION | MISBRANDED PESTICIDE |
|---|---|---|
| TWENTY-ONE | September 19, 2022 | Swimming Pool Disinfectant, ChlorineKing.com, 3" Tablets, EPA Reg. No.: 83936-4, EPA Est No.: 83936-CHN-001, container MEDU5119119 |

INDICTMENT                                      25

| TWENTY-TWO | September 19, 2022 | Granulated Swimming Pool Disinfectant, ChlorineKing.com, Granular TriChlor, EPA Reg. No.: 83936-2, EPA Est No.: 83936-CHN-001, container MEDU2319330 |
|---|---|---|

Each in violation of Title 7, United States Code, Sections 136j(a)(1)(E) and 136*l*(b)(1)(B).

COUNT TWENTY-THREE:  (49 U.S.C. § 5124(c) & (d)) (Violation of the Hazardous Substances Act)

99.    Paragraphs 1 through 77 of this Indictment are re-alleged and incorporated as if fully set forth here.

100.    On or about September 19, 2022, in the Northern District of California, and elsewhere, the defendants,

JERMOINE "JAY" C. BRANTLEY,
HANEEF Z. SALEEM, and
BRIAN  MORRIS,

willfully and recklessly caused to be transported to the Post of Oakland hazardous materials, namely trichloroisocyanuric acid (TCCA) in shipping container MEDU2319330 without shipping papers describing those materials, in violation of Title 49, Code of Federal Regulations, Sections 172.1010, 172.200, 172.2020, and 172.204.

All in violation of Title 49, United States Code, Sections 5124(c) and (d) and Title 18, United States Code, Section 2.

COUNT TWENTY-FOUR:  (49 U.S.C. § 5124(c) & (d)) (Violation of the Hazardous Substances Act)

101.    Paragraphs 1 through 77 of this Indictment are re-alleged and incorporated as if fully set forth here.

102.    On or about September 19, 2022, in the Northern District of California, and elsewhere, the defendants

JERMOINE "JAY" C. BRANTLEY,
HANEEF Z. SALEEM, and
BRIAN  MORRIS,

willfully and recklessly caused to be transported to the Post of Oakland hazardous materials, namely trichloroisocyanuric acid (TCCA) in shipping container MEDU2319330 without the proper 5.1 oxidizer

INDICTMENT                                26

placards signifying the hazard class of those materials, in violation of Title 49, Code of Federal Regulations, Sections 172.1010, 172.200, 172.2020, and 172.204.

All in violation of Title 49, United States Code, Sections 5124(c) and (d) and Title 18, United States Code, Section 2.

COUNT TWENTY-FIVE:  (49 U.S.C. § 5124(c) & (d)) (Violation of the Hazardous Substances Act)

103.   Paragraphs 1 through 77 of this Indictment are re-alleged and incorporated as if fully set forth here.

104.   On or about September 19, 2022, in the Northern District of California, and elsewhere, the defendants

JERMOINE "JAY" C. BRANTLEY,
HANEEF Z. SALEEM, and
BRIAN  MORRIS,

willfully and recklessly caused to be transported to the Post of Oakland hazardous materials, namely trichloroisocyanuric acid (TCCA) in shipping container MEDU5119119 without shipping papers describing those materials, in violation of Title 49, Code of Federal Regulations, Sections 172.1010, 172.200, 172.2020, and 172.204.

All in violation of Title 49, United States Code, sections 5124(c) and (d) and Title 18, United States Code, Section 2.

COUNT TWENTY-SIX:  (49 U.S.C. § 5124(c) & (d)) (Violation of the Hazardous Substances Act)

105.   Paragraphs 1 through 77 of this Indictment are re-alleged and incorporated as if fully set forth here.

106.   On or about September 19, 2022, in the Northern District of California, and elsewhere, the defendants

JERMOINE "JAY" C. BRANTLEY,
HANEEF Z. SALEEM, and
BRIAN  MORRIS,

willfully and recklessly caused to be transported to the Post of Oakland hazardous materials, namely trichloroisocyanuric acid or TCCA in shipping container MEDU5119119 without the proper 5.1 oxidizer placards signifying the hazard class of those materials, in violation of Title 49, Code of Federal Regulations, Sections 172.1010, 172.200, 172.2020, and 172.204.

INDICTMENT                                             27

All in violation of Title 49, United States Code, Sections 5124(c) and (d) and Title 18, United States Code, Section 2.

FORFEITURE ALLEGATION:  (18 U.S.C. §§ 545, 981(a)(1)(C), 982(a)(2)(B) & 28 U.S.C. § 2461(c))

107.   The allegations contained in this Indictment are re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Sections 545, 981(a)(1)(C), 982(a)(2)(B) and Title 28, United States Code, Section 2461(c).

108.   Upon conviction for any of the offenses set forth in Counts One through Five of this Indictment, the defendants,

JERMOINE "JAY" C. BRANTLEY,
HANEEF Z. SALEEM, and
BRIAN  MORRIS,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), all property, real or personal, constituting, or derived from proceeds the defendant obtained directly and indirectly, as the result of those violations.

109.   Upon conviction for any of the offenses set forth in Counts Six through Ten of this Indictment, the defendants,

JERMOINE "JAY" C. BRANTLEY, and
HANEEF Z. SALEEM,

shall forfeit to the United States, pursuant to Title 18, United States Code, Sections 545 and 982(a)(2)(B), all merchandise introduced into the United States in violation of this section, or the value thereof, and all property, real or personal, constituting, or derived from proceeds the defendant obtained directly and indirectly, as the result of those violations.

110.   Upon conviction for any of the offenses set forth in Counts Eleven through Fourteen of this Indictment, the defendants,

JERMOINE "JAY" C. BRANTLEY, and
HANEEF Z. SALEEM,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), all property, real or personal, constituting, or derived from proceeds the defendant obtained directly and indirectly, as the result of those violations.

INDICTMENT                                    28

111.    Upon conviction for any of the offenses set forth in Counts Fifteen through Eighteen of this Indictment, the defendants,

JERMOINE "JAY" C. BRANTLEY,
HANEEF Z. SALEEM, and
BRIAN  MORRIS,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2)(B), all property, real or personal, constituting, or derived from proceeds the defendant obtained directly and indirectly, as the result of those violations.

112.    If any of the property described above, as a result of any act or omission of the defendant:

a.    cannot be located upon exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third party;

c.    has been placed beyond the jurisdiction of the court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), 982(a)(1), Title 28, United States Code, Section 2461(c), and Federal Rule of Criminal Procedure 32.2.

DATED:  08/27/2024                                        A TRUE BILL.


                                                            /s/ Foreperson
                                                         _____
                                                         FOREPERSON

ISMAIL J. RAMSEY
United States Attorney


*Barbara J. Valliere*
_____
BARBARA J. VALLIERE
Assistant United States Attorney


INDICTMENT                                    29

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT    ☐ INFORMATION    ☒ INDICTMENT
                                    ☐ SUPERSEDING

### OFFENSE CHARGED

See Attachment A

☐ Petty
☐ Minor
☐ Misde-meanor
☒ Felony

PENALTY:  See attachment A

Name of District Court, and/or Judge/Magistrate Location

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

### DEFENDANT - U.S

▶ Jermoine ("Jay") C. Brantley, aka Jay E. Johnson

DISTRICT COURT NUMBER
3:24-cr-00482 JD

### PROCEEDING

Name of Complaintant Agency, or Person (& Title, if any)

EPA-CID; DOT-OIG; HSI

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:

☐ U.S. ATTORNEY    ☐ DEFENSE

} SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

} MAGISTRATE CASE NO.

Name and Office of Person
Furnishing Information on this form          Ismail J. Ramsey

☒ U.S. Attorney  ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned)          Barbara J. Valliere

### DEFENDANT

**IS *NOT* IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior
summons was served on above charges ▶ _____

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)
_____

**IS IN CUSTODY**

4) ☐ On this charge

5) ☐ On another conviction        } ☐ Federal  ☐ State

6) ☐ Awaiting trial on other charges

If answer to (6) is "Yes", show name of institution
_____

Has detainer
been filed?    ☐ Yes    } If "Yes"
               ☐ No        give date filed _____

**DATE OF ARREST** ▶    Month/Day/Year _____

Or... if Arresting Agency & Warrant were not

**DATE TRANSFERRED TO U.S. CUSTODY** ▶   Month/Day/Year _____

☐ This report amends AO 257 previously submitted

### ADDITIONAL INFORMATION OR COMMENTS

PROCESS:

☐ SUMMONS    ☐ NO PROCESS*    ☒ WARRANT     Bail Amount: _____

If Summons, complete following:
☐ Arraignment  ☐ Initial Appearance

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment*

Defendant Address:

Date/Time: _____        Before Judge: _____

Comments:

**Attachment A to Penalty Sheet for Jermoine ("Jay") C. Brantley**

**COUNT 1**:  18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud)

Maximum 20 years' imprisonment; $1,000,000 fine; maximum 3 years' supervised release; restitution; $100 special assessment

**COUNTS 2-5**: 18 U.S.C. § 1343 (Wire Fraud)

Maximum 20 years' imprisonment; $1,000,000 fine; 3 years' supervised release; restitution; $100 special assessment

**COUNT 6**:  18 U.S.C. § 371 (Conspiracy to Smuggle Goods into the United States)

Maximum 5 years of imprisonment; $250,000 fine; 3 years' supervised release; restitution; $100 special assessment

**COUNTS 7-10**:  18 U.S.C. § 545 (Smuggling Goods into the United States)

Maximum 20 years' imprisonment; 3 years' supervised release; $250,000 fine; restitution; $100 special assessment

**COUNTS 11-14**:  18 U.S.C. § 541 (Entry of Goods Falsely Classified)

Maximum 2 years' imprisonment; $250,000 fine; 1 year of supervised release; restitution; $100 special assessment

**COUNTS 15-18**:  18 U.S.C. § 542 (Entry of Goods by Means of False Statements)

Maximum 2 years' imprisonment; 1 year of supervised release; $250,000 fine; restitution; $100 special assessment

**COUNTS 19-22**:  7 U.S.C. § 136j(a)(1)(A), (E) & 136l(b)(1)(B) (Distribution and Sale of Unregistered and Misbranded Pesticides)

Maximum 1 year of imprisonment; 1 year of supervised release; $50,000 fine; $25 special assessment

**COUNTS 23-24**:  49 U.S.C. § 5124(c) & (d) (Hazardous Substances  Act)

Maximum 5 years' imprisonment; 3 years' supervised release; $250,000 fine; $100 special assessment

**FORFEITURE**:  18 U.S.C. §§ 981(a)(1)(C), 982(a)(2)(B), & 28 U.S.C. §  2461(c)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT    ☐ INFORMATION    ☒ INDICTMENT
☐ SUPERSEDING

**OFFENSE CHARGED**

See Attachment A

☐ Petty
☐ Minor
☐ Misde-meanor
☒ Felony

PENALTY:    See attachment A

Name of District Court, and/or Judge/Magistrate Location

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

**DEFENDANT - U.S**

▶ Brian Morris

DISTRICT COURT NUMBER
3:24-cr-00482 JD

**PROCEEDING**

Name of Complainant Agency, or Person (& Title, if any)

EPA-CID; DOT-OIG; HSI

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40.  Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. ATTORNEY    ☐ DEFENSE

SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

Name and Office of Person Furnishing Information on this form    Ismail J. Ramsey

☒ U.S. Attorney    ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)    Barbara J. Valliere

**DEFENDANT**

**IS *NOT* IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**

4) ☐ On this charge

5) ☐ On another conviction    } ☐ Federal ☐ State

6) ☐ Awaiting trial on other charges

If answer to (6) is "Yes", show name of institution

Has detainer been filed?    ☐ Yes    ☐ No    } If "Yes" give date filed

**DATE OF ARREST** ▶    Month/Day/Year

Or... if Arresting Agency & Warrant were not

**DATE TRANSFERRED TO U.S. CUSTODY** ▶    Month/Day/Year

☐ This report amends AO 257 previously submitted

**ADDITIONAL INFORMATION OR COMMENTS**

PROCESS:
☒ SUMMONS    ☐ NO PROCESS*    ☐ WARRANT    Bail Amount: _____

If Summons, complete following:
☐ Arraignment    ☐ Initial Appearance

Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment*

Date/Time: _____    Before Judge: _____

Comments:

**Attachment A to Penalty Sheet for Brian Morris**

**COUNT 1**:  18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud)

Maximum 20 years' imprisonment; $1,000,000 fine; maximum 3 years' supervised release; restitution; $100 special assessment

**COUNTS 2-5**: 18 U.S.C. § 1343 (Wire Fraud)

Maximum 20 years' imprisonment; $1,000,000 fine; 3 years' supervised release; restitution; $100 special assessment

**COUNTS 19-22**:  7 U.S.C. § 136j(a)(1)(A), (E) & 136*l*(b)(1)(B) –  Distribution and Sale of Unregistered and Misbranded Pesticides

Maximum 1 year of imprisonment; 1 year of supervised release; $50,000 fine; $25 special assessment

**COUNTS 23-24**:  49 U.S.C. § 5124(c) & (d) (Hazardous Substances  Act)

Maximum 5 years' imprisonment; 3 years' supervised release; $250,000 fine; $100 special assessment

**FORFEITURE**:  18 U.S.C. §§ 981(a)(1)(C), 982(a)(2)(B), & 28 U.S.C. §  2461(c)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT   ☐ INFORMATION   ☒ INDICTMENT
☐ SUPERSEDING

Name of District Court, and/or Judge/Magistrate Location

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

### OFFENSE CHARGED

See Attachment A

☐ Petty
☐ Minor
☐ Misde-meanor
☒ Felony

PENALTY:   See attachment A

#### DEFENDANT - U.S

► Haneef Z. Saleem

DISTRICT COURT NUMBER
3:24-cr-00482 JD

### PROCEEDING

Name of Complainant Agency, or Person (& Title, if any)

EPA-CID; DOT-OIG; HSI

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40.  Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
   ☐ U.S. ATTORNEY   ☐ DEFENSE

SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

Name and Office of Person Furnishing Information on this form   Ismail J. Ramsey

☒ U.S. Attorney   ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)   Barbara J. Valliere

### DEFENDANT

**IS NOT IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior summons was served on above charges ► _____

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**

4) ☐ On this charge

5) ☐ On another conviction   } ☐ Federal ☐ State

6) ☐ Awaiting trial on other charges

If answer to (6) is "Yes", show name of institution

Has detainer been filed?   ☐ Yes   ☐ No   } If "Yes" give date filed _____

**DATE OF ARREST** ►   Month/Day/Year

Or... if Arresting Agency & Warrant were not

**DATE TRANSFERRED TO U.S. CUSTODY** ►   Month/Day/Year

☐ This report amends AO 257 previously submitted

### ADDITIONAL INFORMATION OR COMMENTS

PROCESS:
☒ SUMMONS   ☐ NO PROCESS*   ☐ WARRANT

Bail Amount: _____

If Summons, complete following:
☐ Arraignment   ☐ Initial Appearance

Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time: _____   Before Judge: _____

Comments:

**Attachment A to Penalty Sheet for Haneef Z. Saleem**

**COUNT 1**:  18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud)

Maximum 20 years' imprisonment; $1,000,000 fine; maximum 3 years' supervised release; restitution; $100 special assessment

**COUNTS 2-5**: 18 U.S.C. § 1343 (Wire Fraud)

Maximum 20 years' imprisonment; $1,000,000 fine; 3 years' supervised release; restitution; $100 special assessment

**COUNT 6**:  18 U.S.C. § 371 (Conspiracy to Smuggle Goods into the United States)

Maximum 5 years of imprisonment; $250,000 fine; 3 years' supervised release; restitution; $100 special assessment

**COUNTS 7-10**:  18 U.S.C. § 545 (Smuggling Goods into the United States)

Maximum 20 years' imprisonment; 3 years' supervised release; $250,000 fine; restitution; $100 special assessment

**COUNTS 11-14**:   18 U.S.C. § 541 (Entry of Goods Falsely Classified)

Maximum 2 years' imprisonment; $250,000 fine; 1 year of supervised release; restitution; $100 special assessment

**COUNTS 15-18**:  18 U.S.C. § 542 (Entry of Goods by Means of False Statements)

Maximum 2 years' imprisonment; 1 year of supervised release; $250,000 fine; restitution; $100 special assessment

**COUNTS 19-22**:  7 U.S.C. § 136j(a)(1)(A), (E) & 136*l*(b)(1)(B) (Distribution and Sale of Unregistered and Misbranded Pesticides)

Maximum 1 year of imprisonment; 1 year of supervised release; $50,000 fine; $25 special assessment

**COUNTS 23-24**:  49 U.S.C. § 5124(c) & (d) (Hazardous Substances  Act)

Maximum 5 years' imprisonment; 3 years' supervised release; $250,000 fine; $100 special assessment

**FORFEITURE**:  18 U.S.C. §§ 981(a)(1)(C), 982(a)(2)(B), & 28 U.S.C. §  2461(c)